1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  SLOAN HEFFRON (CABN 285347)
   WENDY M. GARBERS (CABN 213208)
5  Assistant United States Attorneys

6     450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
7     Telephone: (415) 436-7200
      Fax: (415) 436-7234
8     Email: Sloan.Heffron@usdoj.gov
             Wendy.Garbers@usdoj.gov
9
   Attorneys for United States of America
10

11                              UNITED STATES DISTRICT COURT

12                             NORTHERN DISTRICT OF CALIFORNIA

13                                      OAKLAND DIVISION

14  UNITED STATES OF AMERICA,              )  CASE NO. 25-CR-435-HSG-3
                                           )
15         Plaintiff,                      )  **UNITED STATES' MOTION FOR PRETRIAL**
                                           )  **DETENTION OF DEFENDANT ANDRES**
16     v.                                  )  **PALESTINO**
                                           )
17  AFATUPETAIKI FAASISILA,                )  DATE:   January 16, 2026
    JOSE HERRADA-ARAGON,                   )  TIME:   10:30 a.m.
18  ANDRES PALESTINO, and                  )  COURT:  Hon. Nathanael M. Cousins
    TOM PARKER DONEGAN,                    )
19                                         )
           Defendants.                     )
20

21         **I.      INTRODUCTION**

22         The United States respectfully moves the Court to order that defendant Andres Palestino be

23  detained pending trial because he is a danger to the community. Palestino and approximately two-dozen

24  co-conspirators (collectively, the "suspects"), wearing masks and gloves, violently robbed a Fremont

25  jewelry store of approximately $1.7 million worth of jewelry in broad daylight. During the robbery, two

26  of the co-conspirators attacked a security guard, who they threatened and restrained at gunpoint, while

27  Palestino and others ransacked the showroom. After nearly two minutes inside the store, Palestino and

28  two of his co-defendants, Jose Herrada-Aragon and Afatupetaiki Faasisila, returned outside and fled the

                                                      1

scene in a stolen car driven by co-defendant Tom Parker Donegan. Together, the four men led police on a dangerous high-speed vehicle pursuit across the City of Fremont before abandoning the car and attempting to flee on foot, at which point they were apprehended.

Palestino's participation in the brazen and violent robbery in this case demonstrates the danger he poses to the public. This Court should order that he be detained pending trial because there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

## II.     BACKGROUND

Offense Conduct[1]

On the evening of Wednesday, June 18, 2025, a group of approximately 25+ persons conducted a coordinated, takeover-style robbery at Kumar Jewelers in Fremont, California. Dkt. 1 (Complaint). The jewelry store was open at the time, but the entrance was locked and customers were to be admitted on an individual basis by store employees. The suspects gained access to the store when one of the co-conspirators rammed a stolen Honda Accord into the front entrance. *See* Exhibit A, video file labeled "Exterior Video" at 0:50. A security guard outside the store had to move out of the way to avoid being stuck by the car. At the time of the collision, the store's owner ("RV-1") was in the back of the store. His wife ("RV-2"), a female store employee, and a female customer were in the showroom at the front of the store. Following the collision, RV-2 realized the store was being robbed and feared for her safety. The three women ran to the back of the store and called 911. Exhibit A, video file labeled "Interior Video 2" at 0:40.

Based on witness accounts and surveillance footage, it was quickly determined that the robbery was executed in carefully choreographed fashion, as numerous vehicles ("getaway vehicles") transporting the suspects arrived in unison at the store's parking lot immediately after the collision. Exhibit A, file labeled "Exterior Video" at 0:55. One of the getaway vehicles that arrived outside the

---

[1] This section is based upon facts set forth in the Criminal Complaint previously filed in this case, dkt. 1, as well as three surveillance videos depicting the robbery. The three video files are contained on a disc that the government previously filed with the Court in support of its motion to detain co-defendant Afatupetaiki Faasisila in this case. *See* dkts. 16-1 (Heffron Decl.), 16-2 (Exhibit A – Disc Containing Three Surveillance Videos) (hereafter "Exhibit A"), and 17 (Notice of Manual Filing re: Exhibit A).

1  store was a black Acura sedan (the "Black Acura"). Wearing masks, gloves, and hoods, over 20
2  suspects exited from the getaway vehicles and ran inside the store's showroom. Many of the suspects
3  wielded tools, including mallets, hammers, and a sledgehammer, which they later used to smash display
4  cases and access the jewelry contained within. Among the suspects was Andres Palestino, who exited
5  the Black Acura and approached the store's entrance as part of the group. Palestino wore a dark
6  facemask, a gray and black hooded sweatshirt, dark gloves with yellow detailing, dark pants, black
7  Jordan XI basketball shoes, and carried a red backpack with a light-colored Under Armour logo. Co-
8  defendants Jose Herrada-Aragon and Afatupetaiki Faasisila also exited from the Black Acura and
9  entered the store alongside other members of the group.
10         Once inside the store, Palestino and others proceeded to remove jewelry and jewelry boxes from
11  display cases and wall mounted displays throughout the showroom. *See* Exhibit A, files labeled
12  "Interior Video 1" and "Interior Video 2." The surveillance videos show Palestino grabbing items from
13  the store's shattered display cases and stuffing them into his red backpack. The following screenshot
14  from "Interior Video 1" shows Palestino, circled in red:



Less than 90 seconds after first entering the store, Palestino and the other suspects ran out the entrance and returned to the getaway cars waiting in the parking lot. Palestino, Faasisila, and Herrada-Aragon re-entered the Black Acura, where co-defendant Tom Parker Donegan waited in the driver's seat. Seconds later, the Black Acura and several additional suspect vehicles drove off.

Responding police quickly located the Black Acura and four additional suspect vehicles fleeing the store's parking lot. Officers initiated a traffic pursuit, during which the suspect vehicles split-up and drove in different directions. Forced to decide which car to pursue, officers continued after the Black Acura, which led them on a pursuit through several residential areas in Fremont. During the pursuit, the Black Acura passed other vehicles on the wrong side of the road, ran stop signs at multiple intersections, and reached speeds of approximately 80 miles per hour while veering across lanes. Eventually, after leading officers for nearly two miles, the Black Acura struck a curb, damaging the right wheel and causing smoke. The Black Acura continued driving for a short time before coming to a stop, at which point all four occupants—Palestino, Faasisila, Herrada-Aragon and Donegan—exited the car and fled on foot. The officers continued after them.

After foot pursuits of various distances, officers eventually apprehended all four defendants in different parts of the commercial area in which they had abandoned the Black Acura. Palestino did not heed officers' instructions to get to the ground and was eventually taken into custody with the assistance of a police K9 in a nearby bank parking lot. When apprehended, Palestino was wearing the same mask, hooded sweatshirt, gloves, pants, and shoes as in the jewelry store's surveillance videos.

One officer retraced the four men's flight paths from the abandoned Black Acura. In doing so, he located a total of five gold and diamond bracelets with the price tags still attached. The store owner, RV-1, later estimated that approximately 75%-80% of the store's inventory was taken during the robbery, resulting in an estimated loss of approximately $1.7 million dollars' worth of jewelry.

A records check revealed that the Black Acura was reported stolen out of Concord on June 17, 2025. The car's owner reported that there was a Springfield 9mm handgun in the trunk at the time the car was stolen. The records check also indicated that the license plate affixed to the Black Acura at the time it was recovered was assigned to a different vehicle. During their subsequent search of the Black Acura, officers did not locate the 9mm handgun reported by the car's owner. Officers did, however,

find considerable evidence inside the car linking the four defendants to the jewelry store robbery that occurred immediately before the vehicle pursuit. Among the items found inside the car were numerous pieces of loose jewelry, display cases containing jewelry, facemasks, a pry bar, various license plates, a drill, a black backpack containing jewelry and display boxes, and a red Under Armour backpack also containing jewelry and display boxes. Price tags were attached to many pieces of jewelry found in the car.

As part of their investigation, police interviewed various victims and witnesses, including the Security Guard. The Security Guard reported that he was approached by two unidentified male suspects ("US-1" and "US-2") outside the store's entrance during the robbery. US-1 grabbed the Security Guard over his shoulders while US-2 pointed a black Glock handgun at him. US-1 told the Security Guard, "Get on the fucking ground! Get on the fucking ground!" while restraining him. The Security Guard laid on the ground before US-1 directed him to get back up. During this encounter, US-1 asked the Security Guard where his gun was. The Security Guard replied that he did not have a gun and told US-1 to let him go. US-1 continued holding onto him before eventually letting go, at which point the group of robbers returned to their cars and fled the scene.[2]

Procedural History

On June 23, 2025, Faasisila, Herrada-Aragon, Palestino, and Donegan were charged in Alameda County Superior Court in connection with the robbery. In late July, Palestino posted a bail bond in the amount of $20,000 and was released from custody.

On December 8, 2025, the United States filed a complaint charging Faasisila, Herrada-Aragon, Palestino, and Donegan with Robbery Affecting Interstate Commerce, in violation of 18 U.S.C. §§ 1951(a) and 2. Dkt. 1. On December 18, 2025, the Grand Jury returned a one-count Indictment charging all four defendants with this same offense.

### III.   APPLICABLE LAW

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required

---

[2] The attack of the Security Guard occurred outside the view of the store's exterior surveillance video camera.

and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

<u>Flight Risk Standard – Preponderance of Evidence</u>

Facts used to establish a finding that the defendant poses a risk of flight pending trial must be shown by a preponderance of evidence. *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).

<u>Danger Standard – Clear and Convincing Evidence</u>

A finding that a defendant is a danger to any other person or the community must be supported by clear and convincing evidence." *United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008).

<u>Factors for Deciding Detention or Release</u>

In determining whether the pretrial detention standard is met, courts are to consider information regarding:

(1) the nature and seriousness of the offense charged;

(2) the weight of the evidence against the defendant;

(3) the history and characteristics of the defendant; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Of these four factors, the weight of the evidence against the defendant is the least important. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). Consideration of factors other than those set forth in Section 3142 is disfavored. *United States v. Diaz-Hernandez,* 943 F.3d 1196, 1199 (9th Cir. 2019).

**IV.   DISCUSSION**

An analysis of the § 3142(g) factors demonstrates that detention is appropriate in this case because Palestino is a danger to the community.

**A. Nature and Circumstances of the Offense Charged - § 3142(g)(1)**

There is no question that Palestino's crime—Hobbs Act Robbery—is a serious offense. Section 3142(g)(1) expressly provides that in determining whether release is appropriate, courts must consider whether the charged offense is a crime of violence. 18 U.S.C. § 3142(g)(1). Hobbs Act Robbery is a

6

"crime of violence" as that term is defined by federal statute. *United States v Dominguez,* 954 F.3d 1251, 1255 (9th Cir. 2020); *see also* 18 U.S.C. § 924(c)(3).

Here, Palestino played an active role in a brazen, takeover-style robbery. The conduct in this case, as depicted in the surveillance videos and described by the witnesses, is shocking. Like his co-conspirators who also entered the store, Palestino wore a mask and gloves in an effort to conceal his identity. Once inside, he grabbed as much jewelry as he could carry from the smashed cases throughout the showroom and stuffed it into his red/orange backpack. His commission of this robbery was facilitated in part by the actions of his co-conspirators. As noted, the robbers gained entry to the locked showroom after one of the co-conspirators crashed a stolen car into the store's entrance. Two additional co-conspirators restrained the Security Guard at gunpoint outside the store, allowing Palestino and others to bypass the Security Guard and ransack the showroom. And after running from the store, he returned to the stolen Black Acura, which proceeded to lead police on a dangerous pursuit through Fremont before Palestino and his three co-defendants abandoned the car and fled on foot. Although police later found substantial evidence of the robbery inside the Black Acura, they did not locate the 9mm handgun that the car's owner told police had been in the trunk when the car was stolen the day before. To date, the whereabouts of this firearm is unknown to law enforcement.

To be sure, Palestino himself does not appear to have personally threatened or physically harmed others during the robbery. Nevertheless, he knowingly and actively participated in a well-orchestrated, violent crime that placed the store's employees and the robbers themselves at great risk for physical harm. Palestino's involvement in this offense underscores the danger he poses to the community. *See United States v. Lee*, 195 F.Supp.3d 120, 131 (D.D.C. July 1, 2016) ("[D]efendant was part of a group that allegedly planned and executed a violent armed robbery. The robbery was both serious and a violent offense involving the use of two weapons against several victims, and it indicates that defendant would pose a threat to the community were he to be released."); *see also United States v. Ladson*, No. 04-697-1, 2020 WL 3412574, at *9 (E.D. Pa. June 22, 2020) (unpublished) (observing that a defendant's wearing a ski mask and use of a hammer to smash display cases during a robbery "could be fairly characterized as involving violence, even if [the defendant] did not physically harm a store employee or customer or bring a firearm."). The intentionality, coordination, and willingness of the robbers to

participate in a violent crime that posed a significant danger to all those involved make this one of the rare cases in which the nature and circumstances of the charged offense establish by clear and convincing evidence that no conditions of release can ensure the safety of the public. This factor favors detention.

### B. Weight of the Evidence Against the Defendant – § 3142(g)(2)

Although the Ninth Circuit treats this as the least important factor, courts are still "require[d]" to consider it. *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (finding that "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that the defendant would pose a danger if released).

The weight of the evidence against Palestino is extremely strong. As detailed above, Palestino and his co-defendants were apprehended shortly after the robbery, following a vehicle pursuit from the jewelry store to another part of Fremont where they abandoned the Black Acura. The Black Acura contained substantial evidence of the crime itself. At the time he was arrested, Palestino was wearing the same clothing, mask, gloves, and shoes as he was captured wearing in the store's surveillance videos. This factor therefore weighs in favor of detention.

### C. History and Characteristics of the Defendant - § 3142(g)(3)

Palestino committed the robbery in this case when he was 18 years old. In December 2025, he turned 19. Palestino does not have any prior adult convictions. While the Records Check Report prepared by Pretrial Services indicates that he has prior juvenile arrests, none of these appear to have resulted in wardships. This history weighs against a finding of dangerous as to this one factor. Nevertheless, each of the other three § 3142(g) factors supports a finding of dangerousness, and Palestino's lack of adult criminal history does not outweigh the extremely serious nature of the offense with which he is charged.

### D. Danger to the Community - § 3142(g)(4)

Palestino participated in a coordinated, takeover-style heist of a jewelry store in broad daylight. Approximately two-dozen masked persons, including Palestino, accessed the store after a co-conspirator crashed a stolen car into the store's entrance. The suspects, including Palestino, were able to effectuate the robbery in part because two co-conspirators restrained the Security Guard at gunpoint outside while

others pillaged the store's showroom, resulting in an estimated loss of approximately $1.7 million dollars' worth of jewelry.  Palestino and his three co-defendants then led police on a dangerous vehicle pursuit in a stolen car before abandoning the car and attempting to flee on foot.  A firearm that was in the trunk of the car at the time it was stolen was not recovered and remains unaccounted for.  Viewed together, the facts of the present case, and Palestino's association with other individuals also willing to engage in such egregious criminal behavior establish by clear and convincing evidence that he poses a danger to the public.

## V.   CONCLUSION

Andres Palestino presents a significant danger to the community that cannot be adequately mitigated through any condition or combination of conditions.  This Court should order that he be detained pending trial.

DATED:  January 15, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

　　/s/
SLOAN HEFFRON
WENDY M. GARBERS
Assistant United States Attorneys