CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

SLOAN HEFFRON (CABN 285347)
WENDY M. GARBERS (CABN 213208)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    Email: Sloan.Heffron@usdoj.gov
           Wendy.Garbers@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 25-CR-435-HSG-2 |
| Plaintiff, | **UNITED STATES' MOTION FOR PRETRIAL DETENTION OF DEFENDANT JOSE HERRADA-ARAGON** |
| v. | |
| AFATUPETAIKI FAASISILA, JOSE HERRADA-ARAGON, ANDRES PALESTINO, and TOM PARKER DONEGAN, | |
| Defendants. | |

**I.    INTRODUCTION**

The United States respectfully moves the Court to order that defendant Jose Herrada-Aragon be detained pending trial because he is a danger to the community. Herrada-Aragon and approximately two-dozen co-conspirators (collectively, the "suspects"), wearing masks and gloves, violently robbed a Fremont jewelry store of approximately $1.7 million worth of jewelry in broad daylight. During the robbery, two of the co-conspirators attacked a security guard, who they threatened and restrained at gunpoint, while Herrada-Aragon and others ransacked the showroom. After nearly two minutes inside the store, Herrada-Aragon and two of his co-defendants, Andres Palestino and Afatupetaiki Faasisila,

1

returned outside and fled the scene in a stolen car driven by co-defendant Tom Parker Donegan. Together, the four men led police on a dangerous high-speed vehicle pursuit across the City of Fremont before abandoning the car and attempting to flee on foot, at which point they were apprehended.

Herrada-Aragon's participation in the brazen and violent robbery in this case demonstrates the danger he poses to the public. This Court should order that he be detained pending trial because there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

## II. BACKGROUND

Offense Conduct[1]

On the evening of Wednesday, June 18, 2025, a group of approximately 25+ persons conducted a coordinated, takeover-style robbery at Kumar Jewelers in Fremont, California. Dkt. 1 (Complaint). The jewelry store was open at the time, but the entrance was locked and customers were to be admitted on an individual basis by store employees. The suspects gained access to the store when one of the co-conspirators rammed a stolen Honda Accord into the front entrance. *See* Exhibit A, video file labeled "Exterior Video" at 0:50. A security guard outside the store had to move out of the way to avoid being stuck by the car. At the time of the collision, the store's owner ("RV-1") was in the back of the store. His wife ("RV-2"), a female store employee, and a female customer were in the showroom at the front of the store. Following the collision, RV-2 realized the store was being robbed and feared for her safety. The three women ran to the back of the store and called 911. Exhibit A, video file labeled "Interior Video 2" at 0:40.

Based on witness accounts and surveillance footage, it was quickly determined that the robbery was executed in carefully choreographed fashion, as numerous vehicles ("getaway vehicles") transporting the suspects arrived in unison at the store's parking lot immediately after the collision. Exhibit A, file labeled "Exterior Video" at 0:55. One of the getaway vehicles that arrived outside the store was a black Acura sedan (the "Black Acura"). Wearing masks, gloves, and hoods, over 20

---

[1] This section is based upon facts set forth in the Criminal Complaint previously filed in this case (Dkt. 1), as well as three surveillance videos depicting the robbery. The three video files are contained on a disc that was manually filed with the Court. *See* Dkt. 16-1 and 16-2 (Heffron Decl., Exhibit A (Disc Containing Three Surveillance Videos) (hereafter "Exhibit A").

suspects exited from the getaway vehicles and ran inside the store's showroom.  Many of the suspects wielded tools, including mallets, hammers, and a sledgehammer, which they later used to smash display cases and access the jewelry contained within.  Among the suspects was Jose Herrada-Aragon, who exited the Black Acura and approached the store's entrance as part of the group.  Herrada-Aragon wore a dark-colored face covering, a dark hooded sweatshirt, dark gloves with a lighter pattern on the back of the hand, dark pants, and dark shoes with lighter trim.  He was carrying a dark bag slung in front of his body.  Co-defendants Andres Palestino and Afatupetaiki Faasisila also exited from the Black Acura and entered the store alongside other members of the group.

Once inside the store, Herrada-Aragon and others proceeded to remove jewelry and jewelry boxes from display cases and wall mounted displays throughout the showroom.  *See* Exhibit A, files labeled "Interior Video 1" and "Interior Video 2."  The surveillance videos show Herrada-Aragon grabbing items from the store's shattered display cases and stuffing them into his dark bag.  The following screenshot from "Interior Video 1" shows Herrada-Aragon circled in red:



Less than 90 seconds after first entering the store, Herrada-Aragon and the other suspects ran out the entrance and returned to the getaway cars waiting in the parking lot. Herrada-Aragon, Palestino, and Faasisila re-entered the Black Acura, where co-defendant Tom Parker Donegan waited in the driver's seat. Seconds later, the Black Acura and several additional suspect vehicles drove off.

Responding police quickly located the Black Acura and four additional suspect vehicles fleeing the store's parking lot. Officers initiated a traffic pursuit, during which the suspect vehicles split-up and drove in different directions. Forced to decide which car to pursue, officers continued after the Black Acura, which led them on a pursuit through several residential areas in Fremont. During the pursuit, the Black Acura passed other vehicles on the wrong side of the road, ran stop signs at multiple intersections, and reached speeds of approximately 80 miles per hour while veering across lanes. Eventually, after leading officers for nearly two miles, the Black Acura struck a curb, damaging the right wheel and causing smoke. The Black Acura continued driving for a short time before coming to a stop, at which point all four occupants—Herrada-Aragon, Palestino, Faasisila and Donegan—exited the car and fled on foot. The officers continued after them.

After foot pursuits of various distances, officers eventually apprehended all four defendants in different parts of the commercial area in which they had abandoned the Black Acura.

One officer retraced the four men's flight paths from the abandoned Black Acura. In doing so, he located a total of five gold and diamond bracelets with the price tags still attached. The store owner, RV-1, later estimated that approximately 75%-80% of the store's inventory was taken during the robbery, resulting in an estimated loss of approximately $1.7 million dollars' worth of jewelry.

A records check revealed that the Black Acura was reported stolen out of Concord on June 17, 2025. The car's owner reported that there was a Springfield 9mm handgun in the trunk at the time the car was stolen. The records check also indicated that the license plate affixed to the Black Acura at the time it was recovered was assigned to a different vehicle. During their subsequent search of the Black Acura, officers did not locate the 9mm handgun reported by the car's owner. Officers did, however, find considerable evidence inside the car linking the four defendants to the jewelry store robbery that occurred immediately before the vehicle pursuit. Among the items found inside the car were numerous pieces of loose jewelry, display cases containing jewelry, facemasks, a pry bar, various license plates, a

drill, a black backpack containing jewelry and display boxes, and a red Under Armour backpack also containing jewelry and display boxes. Price tags were attached to many pieces of jewelry found in the car.

As part of their investigation, police interviewed various victims and witnesses, including the Security Guard. The Security Guard reported that he was approached by two unidentified male suspects ("US-1" and "US-2") outside the store's entrance during the robbery. US-1 grabbed the Security Guard over his shoulders while US-2 pointed a black Glock handgun at him. US-1 told the Security Guard, "Get on the fucking ground! Get on the fucking ground!" while restraining him. The Security Guard laid on the ground before US-1 directed him to get back up. During this encounter, US-1 asked the Security Guard where his gun was. The Security Guard replied that he did not have a gun and told US-1 to let him go. US-1 continued holding onto him before eventually letting go, at which point the group of robbers returned to their cars and fled the scene.[2]

Procedural History

On June 23, 2025, Faasisila, Herrada-Aragon, Palestino, and Donegan were charged in Alameda County Superior Court in connection with the robbery. On December 8, 2025, the United States filed a complaint charging Faasisila, Herrada-Aragon, Palestino, and Donegan with Robbery Affecting Interstate Commerce, in violation of 18 U.S.C. §§ 1951(a) and 2. Dkt. 1. On December 18, 2025, the Grand Jury returned a one-count Indictment charging all four defendants with this same offense. Herrada-Aragon has been in state custody in connection with juvenile proceedings. The United States obtained a writ of habeas corpus ad prosequendum (Dkt. 32), and Herrada-Aragon came into federal custody on March 5, 2026.

**III.   APPLICABLE LAW**

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

---

[2] The attack of the Security Guard occurred outside the view of the store's exterior surveillance video camera.

5

Flight Risk Standard – Preponderance of Evidence

Facts used to establish a finding that the defendant poses a risk of flight pending trial must be shown by a preponderance of evidence. *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).

Danger Standard – Clear and Convincing Evidence

A finding that a defendant is a danger to any other person or the community must be supported by clear and convincing evidence." *United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008).

Factors for Deciding Detention or Release

In determining whether the pretrial detention standard is met, courts are to consider information regarding:

(1) the nature and seriousness of the offense charged;

(2) the weight of the evidence against the defendant;

(3) the history and characteristics of the defendant; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Of these four factors, the weight of the evidence against the defendant is the least important. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). Consideration of factors other than those set forth in Section 3142 is disfavored. *United States v. Diaz-Hernandez,* 943 F.3d 1196, 1199 (9th Cir. 2019).

**IV.     DISCUSSION**

An analysis of the § 3142(g) factors demonstrates that detention is appropriate in this case because Herrada-Aragon is a danger to the community.

**A. Nature and Circumstances of the Offense Charged - § 3142(g)(1)**

There is no question that Herrada-Aragon's crime—Hobbs Act Robbery—is a serious offense. Section 3142(g)(1) expressly provides that in determining whether release is appropriate, courts must consider whether the charged offense is a crime of violence. 18 U.S.C. § 3142(g)(1). Hobbs Act Robbery is a "crime of violence" as that term is defined by federal statute. *United States v Dominguez,*

6

954 F.3d 1251, 1255 (9th Cir. 2020); *see also* 18 U.S.C. § 924(c)(3).

Here, Herrada-Aragon played an active role in a brazen, takeover-style robbery. The conduct in this case, as depicted in the surveillance videos and described by the witnesses, is shocking. Like his co-conspirators who also entered the store, Herrada-Aragon wore a mask and gloves in an effort to conceal his identity. Once inside, he grabbed as much jewelry as he could carry from the smashed cases throughout the showroom and stuffed it into his dark bag. His commission of this robbery was facilitated in part by the actions of his co-conspirators. As noted, the robbers gained entry to the locked showroom after one of the co-conspirators crashed a stolen car into the store's entrance. Two additional co-conspirators restrained the Security Guard at gunpoint outside the store, allowing Herrada-Aragon and others to bypass the Security Guard and ransack the showroom. And after running from the store, he returned to the stolen Black Acura, which proceeded to lead police on a dangerous pursuit through Fremont before Herrada-Aragon and his three co-defendants abandoned the car and fled on foot. Although police later found substantial evidence of the robbery inside the Black Acura, they did not locate the 9mm handgun that the car's owner told police had been in the trunk when the car was stolen the day before. To date, the whereabouts of this firearm is unknown to law enforcement.

To be sure, Herrada-Aragon himself does not appear to have personally threatened or physically harmed others during the robbery. Nevertheless, he knowingly and actively participated in a well-orchestrated, violent crime that placed the store's employees and the robbers themselves at great risk for physical harm. Herrada-Aragon's involvement in this offense underscores the danger he poses to the community. *See United States v. Lee*, 195 F.Supp.3d 120, 131 (D.D.C. July 1, 2016) ("[D]efendant was part of a group that allegedly planned and executed a violent armed robbery. The robbery was both serious and a violent offense involving the use of two weapons against several victims, and it indicates that defendant would pose a threat to the community were he to be released."); *see also United States v. Ladson*, No. 04-697-1, 2020 WL 3412574, at *9 (E.D. Pa. June 22, 2020) (unpublished) (observing that a defendant's wearing a ski mask and use of a hammer to smash display cases during a robbery "could be fairly characterized as involving violence, even if [the defendant] did not physically harm a store employee or customer or bring a firearm."). The intentionality, coordination, and willingness of the robbers to participate in a violent crime that posed a significant danger to all those involved make this

one of the rare cases in which the nature and circumstances of the charged offense establish by clear and convincing evidence that no conditions of release can ensure the safety of the public.  This factor favors detention.

### B.  Weight of the Evidence Against the Defendant – § 3142(g)(2)

Although the Ninth Circuit treats this as the least important factor, courts are still "require[d]" to consider it.  *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (finding that "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that the defendant would pose a danger if released).

The weight of the evidence against Herrada-Aragon is extremely strong.  As detailed above, Herrada-Aragon and his co-defendants were apprehended shortly after the robbery, following a vehicle pursuit from the jewelry store to another part of Fremont where they abandoned the Black Acura.  The Black Acura contained substantial evidence of the crime itself.  At the time he was arrested, Herrada-Aragon was wearing the same clothing, mask, gloves, and shoes as he was captured wearing in the store's surveillance videos.  This factor therefore weighs in favor of detention.

### C.  History and Characteristics of the Defendant - § 3142(g)(3)

Herrada-Aragon committed the robbery in this case when he was 19 years old.  Although , Herrada-Aragon does not have any prior adult convictions (which is unsurprising given his age), he was in state custody in connection with juvenile proceedings around the time the indictment was returned.  The Records Check Report prepared by Pretrial Services indicates that Herrada-Aragon has prior juvenile law enforcement contacts, including an arrest for robbery.  This factor weighs slightly in favor of detention or is, at least, neutral.

### D.  Danger to the Community - § 3142(g)(4)

Herrada-Aragon participated in a coordinated, takeover-style heist of a jewelry store in broad daylight. Approximately two-dozen masked persons, including Herrada-Aragon, accessed the store after a co-conspirator crashed a stolen car into the store's entrance.  The suspects, including Herrada-Aragon, were able to effectuate the robbery in part because two co-conspirators restrained the Security Guard at gunpoint outside while others pillaged the store's showroom, resulting in an estimated loss of approximately $1.7 million dollars' worth of jewelry.  Herrada-Aragon and his three co-defendants then

led police on a dangerous vehicle pursuit in a stolen car before abandoning the car and attempting to flee on foot. A firearm that was in the trunk of the car at the time it was stolen was not recovered and remains unaccounted for. Viewed together, the facts of the present case, and Herrada-Aragon's association with other individuals also willing to engage in such egregious criminal behavior establish by clear and convincing evidence that he poses a danger to the public.

### V. CONCLUSION

Herrada-Aragon presents a significant danger to the community that cannot be adequately mitigated through any condition or combination of conditions. This Court should order that he be detained pending trial.

DATED: March 9, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

  /s/
SLOAN HEFFRON
WENDY M. GARBERS
Assistant United States Attorneys